Donna Clarice McDANIEL, Appellant,

v.

Robert James McDANIEL, Appellee.

No. S–3985.

Supreme Court of Alaska.

April 3, 1992.

William T. Ford, Anchorage, for appellant.

Vincent P. Vitale, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robert McDaniel and Donna McDaniel were married in June 1974. Although the couple had no children of their own, they raised Donna's three children by a prior marriage. The marriage effectively terminated in March 1988 when Donna moved to California. Robert voluntarily paid Donna approximately $400 per month from the time of separation until the time of trial and paid some of her expenses as well. Robert filed a complaint for divorce in November 1988.

Following a trial in February 1990, the court granted a decree of divorce and ordered the division of marital property.

Donna and Robert each had acquired real property prior to the marriage. Robert purchased real property on Bennett Street in Grass Valley, California in 1968 or 1969. Rental income from the property was deposited into the parties' joint account, while expenses and taxes on the property were paid out of the joint account. During the marriage, the McDaniels realized a net profit on the property. Donna testified that she handled insurance and roofing contracts on the property and that she had cleaned it between renters. The trial court characterized her involvement with the property as "minimal" and awarded the property to Robert as his separate premarital property.

Robert also sold other property in Grass Valley and used part of the proceeds to purchase the McDaniels' residence on Taft Street in Anchorage in November 1974.

Robert had started a heavy equipment trucking business, McDaniel Trucking, prior to the parties' marriage. The business was operated out of their Taft Street home. By the time of the parties' separation, the company owned fourteen trucks and miscellaneous equipment. At trial Donna stipulated to appraisals valuing the McDaniel Trucking equipment as of the date of the parties' separation in 1988. Ted Sherwin, CPA, testified for Robert to the value of the McDaniels' assets. Sherwin testified that McDaniel Trucking should be valued based on its net asset value minus liabilities. In valuing McDaniel Trucking, Sherwin used the stipulated value of the equipment, deducting ten percent for cost of sale and another ten percent for cost of shipping.

The trial court awarded McDaniel Trucking to Robert. In valuing McDaniel Trucking, the trial court deducted a ten percent

cost of sale from the stipulated value of the equipment. The trial court also deducted $47,767 which was in accounts payable at the time of the parties' separation. By the time of trial, the company had paid this debt and had $44,695 in a business account.

The parties had purchased four lots in the MacKentie subdivision in Anchorage, using three of the lots to park the McDaniel Trucking vehicles. The remaining lot contained two small houses which generated rental income. The parties stipulated to a value of $114,500 for the four MacKentie lots. There was an outstanding mortgage on the property of $138,798.52, as well as outstanding maintenance costs. The court awarded the lots to Robert assigning a negative equity of $30,887.85.

In 1985 Robert had acquired a one-half interest in Span–Alaska, a partnership between Mr. Harmon and himself. The partnership had several assets including a Span machine, a large boom truck and a foam machine. In March 1988 Span–Alaska liabilities totaled $60,000. By the time of trial the debt had been paid.

In valuing Span–Alaska the trial court deducted ten percent for cost of sale. The court assigned Span–Alaska a negative value of $5,815, taking into account the partnership's debt as of the date of separation. The court awarded the interest in the partnership to Robert, attributing one half of the negative value to him.

In addition to the MacKentie lots, McDaniel Trucking and the Span–Alaska partnership interest, the court awarded various items of equipment to Robert. The court valued the marital estate at $204,179.25 and found a fifty-fifty division reasonable. The court ordered Robert to pay Donna $17,000 within thirty days of the decree. The court credited Robert for the money paid during separation, and ordered the balance of $84,090 payable over fifteen years in monthly payments at eight percent interest. Alternatively, the court ruled that Donna could receive a deed of trust from Robert to secure the $84,090 by quitclaiming her interest in the Taft Street property to him, conditioned on the mortgage holder's agreement to hold Donna harmless.

Donna appeals, claiming error in the following determinations:

(a) determining that the Bennett Street property is not subject to division;

(b) valuing McDaniel Trucking and Span–Alaska at the time of separation, rather than at the time of trial;

(c) allowing a ten percent deduction for cost of sale deduction in valuing McDaniel Trucking and Span–Alaska ... where no sale of these assets was anticipated;

(d) assigning a negative value to Span–Alaska and the MacKentie lots rather than assigning these a zero value;

(e) ordering the payout without security over fifteen years at interest below the legal rate.

## II. STANDARD OF REVIEW

We must determine whether the trial court's property division was within the broad discretion granted to it by AS 25.24.160(a)(4). *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988). In a marriage of long duration, where the parties have commingled their assets, the trial court determines property division using a three step process: (1) determining the property available for distribution; (2) valuing that property; and (3) equitably allocating that property. *Moffitt,* 749 P.2d at 346. If the trial court makes legal determinations at the first step, we review those determinations under the independent judgment standard. *Id.* The second step usually involves factual determinations, which we may reverse only upon a finding of clear error. *Id.* The third step is reviewable under the abuse of discretion standard. We will not disturb the allocation "unless it is clearly unjust." *Id.* (quoting *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983)).

## III. DISCUSSION

A. The Bennett Street Property.

We must independently determine if the invasion of Robert's Bennett Street property is required.

In limited circumstances invasion of one spouse's pre-marital property may be required as a matter of law. *Burgess v. Burgess*, 710 P.2d 417 (Alaska 1985); *Wanberg v. Wanberg*, 664 P.2d 568, 571 (Alaska 1983). In *Wanberg*, 664 P.2d at 571, we held that one such circumstance was where the parties demonstrated an intent to treat pre-marital property as joint property. Holding that the entire equitable value of a lot was subject to division even though it was held in one parties' name, we explained:

> The Wanbergs consistently combined their efforts in improving and managing the property, and used the building as their joint personal residence for nearly two years. Although Dianne's name never appeared on the title to the Grandview lot, she signed jointly with John when a permanent $120,000 loan was taken against the property. Under these circumstances we hold that it was an abuse of discretion for the trial court to shield the property from equitable distribution merely by affixing to the property the label of "pre-marital asset."

*Id.* at 572. We also characterized as a marital asset other pre-marital property owned by John that served as the Wanbergs' residence for some of their marriage. *Id.* at 572.

■ At least two factors are relevant in this determination: (1) the use of property as the parties' personal residence, and (2) the ongoing maintenance and managing of the property by both parties. *Burgess*, 710 P.2d at 420. *See also Wanberg*, 664 P.2d at 572 (characterizing as a marital asset pre-marital property used as a residence for some of the marriage). The focus of the analysis, however, remains on

intent. Participation by both spouses in the management and maintenance of the property will not automatically transform pre-marital into marital property. Rather, the participation must be significant and evidence an intent to operate jointly. *See Brooks v. Brooks*, 733 P.2d 1044, 1054 (Alaska 1987) (holding that the performance of "some limited maintenance and management tasks ... cannot be said to rise to the level of active interest in the ongoing maintenance, management and control of the property necessary to demonstrate an intent to hold the apartment complex jointly.").

■ We conclude that the trial court did not err in determining that Donna's involvement with the Bennett Street property was not sufficient to impute an intent by the parties to treat the property as joint property. According to the record, Robert bought the Bennett Street property in 1968 or 1969 and kept it solely in his name throughout the marriage. The parties did not reside on the property. Nor did they jointly incur liability on the property as the parties had in *Wanberg*. Although Donna testified to handling insurance and roofing contracts in maintaining the property and to cleaning the property between renters, these efforts alone are insufficient to require invading the property under the rationale of *Wanberg* and *Burgess*.[1]

**B. The Correct Date for Valuing McDaniel Trucking and the Span–Alaska Partnership.**

■ We recently explained in *Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991), that the valuation of marital property should "be as close as practicable to the date of trial." However, assets may be

---

1. Alternatively, Donna claims that "The property should have been ... invaded under *Brooks v. Brooks*, 733 P.2d 1044, 1053 (Alaska 1987) to balance equities between the parties." In *Brooks* we recognized that two circumstances support the equitable invasion of *the post-marital appreciation of pre-marital property:* "first, where the parties demonstrate their intent to treat premarital property as joint property ...; and second, where one spouse's contribution to the marital community, pecuniary or otherwise, has benefited the other spouse's premarital

property." *Id.* at 1053 (citations omitted). We have addressed the first circumstance above. The second circumstance is relevant to the post-marital appreciation of pre-marital property, focusing on one spouse's contribution to the appreciation of the other spouse's property. Invasion of the post-marital appreciation of the Bennett Street property is not at issue here. Therefore, *Brooks* is not applicable to Donna's claim regarding the equitable invasion of the Bennett Street property itself.

valued at a different time in special situations, including where "the value of marital property increases [after the separation] due to the efforts of one of the spouses." *Id.* at 820 (quoting Lawrence J. Golden, *Equitable Distribution of Property* § 7.02, at 208 (1983)). If the trial court determines to use the date of separation for valuation it should issue "specific findings as to why the date of separation is the more appropriate choice." *Id.* at 820.[2]

In this case the trial court awarded McDaniel Trucking and all its assets to Robert, stating that "the only practical valuation is the net value of the assets minus the liabilities." It also awarded the Span–Alaska partnership to him, stating:

There exists an interest in a partnership known as Span–Alaska, including a lot in Wasilla with a value of $9,500 and other equipment and vehicles. The total value of these assets is $59,150. There is a 10% cost of sale of some of these assets of $4,965. The net value of the land and personal property is $54,185. There exists a $60,000 debt owed by the partnership. This means that there is a negative equity of $5,815. Mr. McDaniel owes one-half (1/2) of this sum. This $2,907.50 shall be his sole debt.

By the time of trial both McDaniel Trucking and Span–Alaska had paid the debts which they owed at the time of the McDaniels' separation. However, the trial court was silent on why it valued these assets at the time of separation rather than trial, affording this court an inadequate basis for review. The issue of the valuation of Span–Alaska and McDaniel Trucking must

thus be remanded for redetermination and written findings of fact consistent with *Ogard,* to afford this court a sufficient basis for review.

## C. The Cost of Sale Deduction.

■ Donna argues that the court erred in allowing a ten percent cost of sale deduction where no sale was contemplated.

The Washington Court of Appeals considered the propriety of the cost of sale deduction in *In re Marriage of Berg,* 47 Wash.App. 754, 737 P.2d 680 (1987). The court held:

In order to justify deduction for costs of sale, there must be evidence in the record (1) showing that the party who will receive the asset intends an imminent sale, and (2) supporting the estimated costs of sale.

*Id.* 737 P.2d at 683. *See also In re Marriage of Martin,* 32 Wash.App. 92, 645 P.2d 1148, 1151 (1982) (holding that the allowance for sale costs at a home was improper where there was no evidence home was going to be sold); *In re Marriage of Kopplin,* 74 Or.App. 368, 703 P.2d 251 (1985) (disallowing a cost of sale deduction where there was no evidence of spouse's intent to sell real property awarded to him).

There is nothing in the record indicating that Robert intended to liquidate McDaniel Trucking or the Span–Alaska partnership. In fact, the trial court awarded these assets to Robert so he could continue operating them.[3] The trial court erred in allowing this deduction.[4]

---

**2.** Moreover, this court has held that generally in divorce proceedings the trial court must render findings sufficiently explicit to allow an understanding of the basis for its decision. *Lewis v. Lewis,* 785 P.2d 550, 552 (Alaska 1990); *Lang v. Lang,* 741 P.2d 1193, 1195 (Alaska 1987); *Merrill v. Merrill,* 368 P.2d 546, 547–48 (Alaska 1962).

**3.** As the trial court explains:

[T]he only practical assignment of these two items of business interest are to Mr. McDaniel. Obviously ... he is the one who has the particular skill and ability to *continue* with McDaniel Trucking. ...

Mrs. McDaniel being outside Alaska and not in a position to effectively manage that and *maintain* its business relationship with the

partner in Span Alaska, hence the only practical assignment of Span Alaska is as well to Mr. McDaniel.

(Emphasis added).

**4.** Robert's argument that Donna cannot challenge the valuation because she stipulated to the value of the McDaniel Trucking equipment and offered no valuation evidence of her own is unpersuasive. Although Donna stipulated to the value of the trucks she did not stipulate to Robert's expert's work sheet on which was presented the valuation of the business, including the cost of sale deduction. Moreover, Donna objected to the cost of sale deduction. Although Donna did not present her own evidence valuing McDaniel Trucking, she did timely raise

#### D. Negative Equity.

The trial court found:

There exist four (4) lots in Anchorage, known as the MacKentie properties. The court accepts the parties' stipulated value of $114,500. There exist outstanding mortgages of $138,797.85. In addition, there is debt associated with the property in the amount of $6,500. This money is owed to Kenai Supply and Young Contracting. Thus, there exists a negative equity of $30,887.

The trial court also assigned a negative value to Span–Alaska of $5,818.

■ As a general rule Alaska courts consider marital debt in valuing the marital estate. *Mack v. Mack*, 816 P.2d 197, 199 (Alaska 1991). For example, we set aside a property division and remanded with instructions to not only consider all marital assets but to "clearly identify all debts incurred by the parties" in determining the overall division in *Burcell v. Burcell*, 713 P.2d 802, 805 (Alaska 1986). *See also Burgess*, 710 P.2d at 421–23 (considering one spouse's assumption of joint debts as a factor in dividing marital assets and accounting for the mortgage in valuing the home).

■ Zero valuation of negative equity is the exception. *Mack*, 816 P.2d at 199. In *Mack*, we held that it was only the "peculiar nature" of the nonrecourse debt, which allowed the party to default without

incurring a loss, that justified the trial court's decision to ignore the negative equity of real property. *Id.* at 199–200.

The parties stipulated to the value of the MacKentie lots. The trial court recognized existing debt on the property in valuing it. The trial court's valuation of the MacKentie lots is supported by the record.

Span–Alaska presents a different problem. However, we need not reach the issue of whether the valuation of Span–Alaska should fall under an exception to the general valuation method as was the case in *Mack*.

■ In March 1988 the Span–Alaska liabilities totaled $60,000. By the time of trial the debt had been paid. It is precisely because the trial court valued Span–Alaska at the time of the parties' separation that the question of its negative equity arises. As discussed in section B above, the Span–Alaska valuation must be remanded for redetermination and written findings of fact consistent with *Ogard*.

#### E. The Terms of the Payout.

In her brief, Donna alleges the following error in the trial court's allocation of this marital asset: (1) ordering an interest payment at eight percent, where the legal rate is 10.5 percent; (2) assigning a fifteen year term to the payout; and (3) failing to award her security for the payout.[5]

---

an objection to the allowance of the ten percent cost of sale deduction.

**5.** In her Statement of Points on Appeal Donna stated:

The trial court erred by ordering that the promissory note given the appellant by the appellee as part of the division of the marital estate bear rate of interest less than the market or legal rate then prevailing.

In her supplemental Statement of Points on Appeal she stated:

The trial court erred by ordering that the promissory note given the Appellant by Appellee as part of a division of marital estate bear a rate of interest less than the market or legal rate then prevailing.

Thus Donna's contention regarding the term of the payout and her claim concerning security on the judgment were not specifically set forth in her Points on Appeal as required by Appellate Rule 210(e). Robert briefed the issue relating

to the payout term but did not brief the issue concerning security.

In support of her argument Donna notes that Robert received all the parties' assets, while she received only her right to be paid for her interest in the assets; that her payment was to be generated by Robert's efforts in using the marital assets; that absent her release from the Taft residence deed of trust, she was awarded only a personal promissory note from Robert; and that if something were to happen to Robert or business declined all the marital assets would be lost to creditors while she would have no priority to receive compensation.

We only address the issues of the payout interest rate and the payout term. We address the payout term issue, though Donna does not raise it in her Points on Appeal since Robert commented on it in his brief and therefore will not be prejudiced by our choosing to address it. However, we do not address the issue of payout security, since we conclude that the issue was

### a. Interest Rate.

Although a trial court has discretion whether to award interest on a judgment in a divorce proceeding, when interest is awarded it must be "to the same extent interest on judgments generally is allowed by statute." *Dixon v. Dixon*, 747 P.2d 1169, 1171 (Alaska 1987). AS 09.30.070 sets the interest rate for judgments at 10.5 percent a year. Therefore, the trial court erred in awarding interest at eight percent.[6]

### b. Fifteen Year Payout Term.

Although the trial court rendered findings of fact to support its equal division of the marital estate, it did not render findings to support the terms of the payment scheme. The trial court found:

> 17. Both parties are in relatively good health. Both are in their fifties. Mrs. McDaniels [sic] has some back problems, which are relatively easily treated. These problems do not make her unemployable. She is limited from heavy, repeated lifting.
>
> Mr. McDaniels [sic] has been in the trucking industry during almost all of his worklife. He has been successful in this endeavor. He has a good chance of success in the future. He has the greater earning potential. Mrs. McDaniel will be in an entry level position when she starts work again. This is a fourteen (14) year marriage. They had no children of their own. However, Mr. McDaniels [sic] was of great assistance in helping Mrs. McDaniel to raise her four (4) children from a previous marriage. Mrs. McDaniel will have some future medical expenses. She needs help in obtaining transportation. Mr. McDaniel will have to earn sufficient funds to pay the outstanding business debts existing at the time of divorce. Based on the foregoing a fifty/fifty (50/50) division of the marital estate is reasonable.

> 18. Within thirty (30) days, Mr. McDaniels [sic] will pay $17,000 to Mrs. McDaniel, as he suggested. In addition, the $400 per month he paid to her during separation represented earnings of McDaniel Trucking, Inc. Accordingly, she is entitled to keep that money. He is entitled to a credit for that amount. In addition, Mrs. McDaniel shall receive $84,090 payable at 8% over fifteen (15) years.

We thus do not have a sufficient basis to review the trial court's determination regarding the term of the payout and remand this issue to the trial court to render sufficient findings.

## IV. CONCLUSION

The case is remanded to the trial court for (1) redetermination and written findings of fact on the date for and valuation of McDaniel Trucking and the Span–Alaska partnership; (2) redetermination of the length of the payout term; and (3) modification of interest to the rate of 10.5 percent. We affirm the trial court's determination that the Bennett Street property is Robert's separate property and the trial court's valuation of the MacKentie lots.

The judgment of the superior is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

---

not properly raised and that the result is not plainly erroneous.

**6.** Donna relies on AS 45.45.010 as setting the 10.5 percent interest rate. However, that section applies to interest rates in trade practices. The interest rate for court judgments is set out in AS 09.30.070.