**Kenneth HARRELSON, Appellant,**

v.

**Barbara HARRELSON, Appellee.**

**No. S–7141/7462.**

Supreme Court of Alaska.

Feb. 14, 1997.

Mark S. Bledsoe, Bledsoe & Knutson, Anchorage, for Appellant.

Vincent Vitale, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

EASTAUGH, Justice.

### I. *INTRODUCTION*

Kenneth (Larry) Harrelson appeals the trial court's division of property and award of rehabilitative spousal support to Barbara Harrelson. We affirm in part and reverse in part.

### II. *FACTS AND PROCEEDINGS*

#### A. *Facts*

Barbara and Larry Harrelson were legally married for the last thirty-four months of their twelve-year relationship. They began living together in the fall of 1982, and resided in Barbara's California home until 1985. They began holding themselves out as husband and wife in 1985.

In 1985 Larry obtained a job with an Anchorage automobile dealership and the couple moved to Alaska. Larry is currently employed at the dealership, where he is now the finance manager. Barbara worked as a waitress and a bartender. She quit working in the spring of 1991 and was not employed outside the home for the remainder of their relationship. At trial, Barbara testified that she was currently enrolled at the University of Alaska Anchorage and intended to earn a degree in journalism and public relations by June 1999.

From 1987 through 1993, the parties filed joint federal income tax returns as though they were married.[1] In 1989 the parties were joint owners of a home. The parties separated from October 1989 to June 1990 and from October 1990 to December 1990 or January 1991, when they reconciled. During the separation, each purchased a separate residence with his or her own funds. After they reconciled, they sold their separate residences and retained the proceeds in their individual bank accounts. They married on January 3, 1992.

About the time they last reconciled in 1991, they had a condominium built on Brittany Drive. It was their marital residence, and Barbara still resided there at the time of trial. Title is solely in Larry's name. The parties dispute the extent of Barbara's financial contribution to the construction expenses. Both parties testified that the condominium was solely in Larry's name because of Barbara's impaired credit rating.

The parties permanently separated in October 1994.

#### B. *Proceedings*

Following trial in 1995, the court issued findings of fact and conclusions of law and a final decree of divorce. Relying on the disparity between the earnings of the parties, the court held that an unequal distribution of the marital assets and an award of spousal support were warranted. The court found the value of the marital estate, which included the anticipated net sale proceeds from the Brittany Drive condominium, to be $196,554. The court awarded assets worth $135,657 to Barbara, and the remainder of the marital estate, worth $60,897, to Larry. The court awarded Barbara $1,200 per month in spousal support "as long as she is a full time student, until she dies, marries, or through June, 1999, whichever first occurs."

Larry filed a Civil Rule 60(b) motion for relief from the judgment, requesting credit for his post-separation payments on the condominium and Barbara's car. The court denied a credit for the condominium payments but granted a credit for Larry's payments on the car loan. The court denied Larry's subsequent Civil Rule 77 motion for reconsideration.

### III. *DISCUSSION*

#### A. *Standard of Review*

In *Cox v. Cox,* 882 P.2d 909 (Alaska 1994), we summarized the standards of review for

---

1. Larry's earned income ranged from $69,551 in 1988 to $128,202 in 1993. In that same time period, Barbara's earned income ranged from zero to $14,445 in 1990.

the various elements of divorce proceedings as follows:

> The trial court has broad discretion in fashioning a property division in a divorce action. This court reviews the trial court's determination of what property is available for distribution under an abuse of discretion standard. If in the course of determining what property is available the trial court makes any legal determinations, such determinations are reviewable under the "independent judgment" standard. All questions of law are reviewed *de novo* with this court adopting the rule of law that is most persuasive in light of precedent, reason and policy. However, the trial court's findings that the parties intended to treat property as marital are disturbed only if clearly erroneous. The valuation of available property is a factual determination that should be reversed only if clearly erroneous. The equitable allocation of property is reviewable under an abuse of discretion standard and will not be reversed "unless it is clearly unjust."

*Id.* at 913 (citations omitted).

▆▆ We review a denial of a Civil Rule 60(b) motion for relief from a judgment for an abuse of discretion. *Morris v. Morris,* 908 P.2d 425, 427 (Alaska 1995). Likewise, we review a denial of a Civil Rule 77 motion for reconsideration for an abuse of discretion. *Neal & Co. v. Association of Village Council Presidents Regional Hous. Auth.,* 895 P.2d 497, 506 (Alaska 1995). We will find an abuse of discretion only when "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994) (quoting *Dura Corp. v. Harned,* 703 P.2d 396, 409 (Alaska 1985)).

### B. *Property Division*

Larry raises a number of issues regarding the court's property division. These issues fall into the following broad categories: duration of the marriage; classification of property; each party's contribution to the marital estate; the question of commingling of assets and the application of a rescission or source of funds approach to the property division; denial of credit for post-separation house payments; and the allegedly clear injustice of the award.

### 1. *Duration of marriage*

The trial court made conflicting statements in its findings of fact and conclusions of law regarding the duration of the marriage. It found that by 1985 the parties "were holding themselves out as husband and wife" and that "[t]he parties lived together in what they believed to be a common law marriage from at least 1985 until January 3, 1992." Although the court found that the parties were married on January 3, 1992, it also found that the parties were married for "eight years." Additionally, it stated "Mr. Harrelson admits that the parties were married in Mexico in 1992. However, for the first time he denies that they were married prior to the 1992 Mexican ceremony...."[2]

▆▆ Alaska does not recognize common law marriages. AS 25.05.011;[3] *Serradell v. Hartford Accident & Indem. Co.,* 843 P.2d 639, 641 n. 5 (Alaska 1992) ("There is no common law marriage in Alaska.") (citing *Edwards v. Franke,* 364 P.2d 60, 63–64 (Alaska 1961)). We have held, however, that "the trial court is free to consider the parties' entire relationship, including any period(s) of premarital cohabitation, in making its property division under AS 25.24.160(a)(4), so long as the court observes the distinction which AS 25.24.160(a)(4) draws between as-

---

**2.** We suspect that this inconsistency is the result of the court's adoption of findings and conclusions prepared by counsel. While adopting findings and conclusions prepared by counsel is permissible, it "is appropriate only when the findings and conclusions 'reflect the court's independent view of the weight of the evidence.'" *Smith v. Smith,* 845 P.2d 1090, 1093 n. 3 (Alaska 1993) (quoting *Industrial Indem. Co. v. Wick Constr. Co.,* 680 P.2d 1100, 1108 (Alaska 1984)).

**3.** In relevant part, AS 25.05.011 states:

> (a) Marriage is a civil contract requiring both a license and solemnization ...
>
> ....
>
> (b) A person may not be joined in marriage in this state until a license has been obtained for that purpose as provided in this chapter. A marriage performed in this state is not valid without solemnization as provided in this chapter.

sets acquired prior to and during coverture."[4] *Murray v. Murray,* 788 P.2d 41, 42 (Alaska 1990). Because the parties were legally married for only thirty-four months, it was clear error to find that the parties had been married for eight years and to otherwise imply a marriage of longer duration.

In stating that Barbara was married for eight years, the trial court may have meant that Barbara had a marriage-like relationship with Larry for eight years. That would have been a permissible characterization of the parties' relationship. Other language in the findings of fact and conclusions of law implies that may have been what the trial court meant. That is not what the trial court expressly said, however. Nor did it make any reference to *Murray* that might have helped confirm that was what it meant. Rather than inferring a finding the trial court might not have intended, we prefer to remand so that it can clarify (or correct if necessary) its finding that the marriage lasted eight years. Therefore, because it is unclear to what extent the court's treatment of the duration of the marriage influenced the property division, we must reverse the property division and remand for reconsideration. On remand, the court is free to consider the parties' premarital cohabitation as long as it makes the proper property distinction mandated by *Murray* and AS 25.24.160(a)(4).[5]

### 2. *Classification of property*

The trial court held that "[t]he condominium is deemed a marital asset because a substantial portion of Mrs. Harrelson's premarital money was used to purchase it and she was actively involved in its construction and maintenance."

Larry asserts that the court erred in treating the Brittany Drive residence as marital property because he purchased the property prior to the parties' marriage, was the sole titleholder, and paid all condominium dues, taxes, insurance, and utility expenses. Larry further argues that the property should not be deemed to be a marital asset because Barbara did not show intent to treat the property as a joint asset, as the property was not placed in joint ownership and Barbara was not substantially involved in managing, maintaining, or improving the property.

We have held that "[i]n limited circumstances invasion of one spouse's property acquired before coverture may be required as a matter of law." *Wanberg v. Wanberg,* 664 P.2d 568, 571 (Alaska 1983). In *Cox,* this court summarized when premarital property becomes marital property as a matter of law:

> Separate property becomes marital only upon a showing that the parties intended to treat the property as marital. *Chotiner [v. Chotiner,* 829 P.2d 829, 832 (Alaska 1992)]. The proper standards for determining whether real property should be characterized as marital are set forth in such cases as *Chotiner* and *McDaniel v. McDaniel,* 829 P.2d 303 (Alaska 1992). The relevant factors include: "(1) the use of property as the parties' personal residence, and (2) the ongoing maintenance and managing of the property by both parties," *McDaniel,* 829 P.2d at 306 (citing *Burgess v. Burgess,* 710 P.2d 417, 420 (Alaska 1985)), as well as (3) placing the title of the property in joint ownership and (4) using the credit of the non-titled owner to improve the property. *Chotiner,* 829 P.2d at 833.

*Cox,* 882 P.2d at 916.

We find that the record is clear that the parties intended to treat the Brittany Drive residence as marital property. The condominium was the parties' marital residence and they both contributed financially

---

4. In pertinent part, AS 25.24.160(a)(4) states:
   (a) In a judgment in an action for divorce ... the court may provide
   . . . .
   (4) for the division between the parties of their property, ... whether joint or separate, acquired only during marriage, in a just manner and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property, ... of either spouse acquired before marriage when the balancing of the equities between the parties requires it; . . . .

5. We are reversing not because we require a "talismanic" reference to *Murray* or a "formalistic invocation" of particular language, Dissent at 20, but because we cannot determine whether the error influenced the property division.

to its construction. Both testified that Barbara was not on the title because of her impaired credit. Additionally, Larry acknowledges that Barbara acted as his agent for the building of the condominium, making all the interior decorating decisions and generally supervising the construction. We hold that these facts are sufficient to show the parties' intent to hold the property as a joint asset and that the trial court did not err in treating it as such.

### 3. The parties' contributions to the marital estate

The trial court found that Barbara contributed the entire proceeds of the sale of her California home, $81,923, to "joint expenses" and the "marital enterprise." The court stated that Barbara "did not segregate these funds from the marital estate." Larry argues that the court erred in holding that Barbara contributed $82,000 to the marital estate and in failing to consider Larry's financial contributions to the marriage.[6]

■ Barbara received the proceeds from the sale of her California home in 1990 and testified to the use of this money before the parties' marriage in 1992. Therefore, to the extent the trial court characterized Barbara's contribution of the $82,000 as a contribution to the marital estate, the trial court erred. The court recognized, however, that Barbara contributed the entire proceeds to the parties' joint economic enterprise. Because the trial court was free to consider the parties' entire relationship in determining an equitable property division, Murray, 788 P.2d at 42, any error in characterizing Barbara's contributions as marital was harmless.

■ The trial court also made other findings bearing on the parties' relative contributions to the marital estate. It noted the parties' past incomes, explicitly listing their respective incomes from 1987 to 1993. It also noted Barbara's unemployment during the later years of the parties' relationship, and the fact that after the parties separated, Larry continued to pay the condominium

mortgage payments and most of Barbara's living expenses. Moreover, the court stressed that the "glaring disparity" between the parties' earning capacities was the fundamental factor supporting the unequal property division. We hold that the trial court properly considered the parties' respective contributions and did not abuse its discretion in holding that an unequal property distribution was warranted.

### 4. Substantial commingling of assets and application of a rescission or source of funds approach in the property division

■ The trial court found that "[f]rom at least 1985 through October 1994, [the parties] commingled their assets. They had joint checking accounts. They spent their individual earnings on family expenses." Larry argues that the court erred in finding that the parties substantially commingled their assets and thus erred in refusing to apply a rescission theory under *Rose v. Rose*, 755 P.2d 1121 (Alaska 1988), or a source of funds theory under *Zimin v. Zimin*, 837 P.2d 118 (Alaska 1992).

The parties lived together for approximately twelve years. The court heard testimony that they shared living expenses, filed joint federal tax returns for six years (and shared the expense of joint tax liabilities), and raised and supported each other's children. Before marrying, they owned and sold a home together. The trial court did not clearly err in finding that the parties had substantially commingled their assets.

We held in *Rose* that for marriages of short duration in which assets have not been commingled a "trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission, aimed at placing the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place." 755 P.2d at 1125. We have refused to apply *Rose* when the parties have commingled assets. *Cox*, 882 P.2d at 914; *Zimin*, 837 P.2d at 121; *Bell v. Bell*, 794 P.2d 97, 102 (Alaska 1990).

---

**6.** We review factual findings for clear error. *State, Dep't of Revenue v. Merriouns*, 894 P.2d 623, 625 (Alaska 1995).

Because we hold that the trial court did not err in finding substantial commingling of assets, we find no error in its decision not to apply *Rose.*

In *Zimin,* 837 P.2d at 122, we upheld a source of funds approach in a property division when the parties failed to present any evidence of the present value of the disputed property. In *Cox,* we clarified that the source of funds approach is only appropriate under limited circumstances:

> In *Zimin,* the trial court was essentially forced into a source of funds approach because there was no evidence regarding the present value of the disputed property.... Our holding was thus limited to the approval of the source of funds approach in the limited context of determining current value in the absence of any other evidence.

*Cox,* 882 P.2d at 914–15 (citation omitted). Because the Harrelsons presented evidence regarding the current value of the disputed property, *Zimin* is inappropriate and the trial court did not err in declining to adopt this approach.

### 5. *Denial of credit for post-separation house payments*

▉▉▉ Larry argues that the trial court erred in denying his motion to modify the final decree to give him credit for post-separation house payments. Larry asserts that Barbara's exclusive possession of the house mandates that he be given credit for post-separation payments made to maintain the Brittany Drive residence.

"We have required that trial courts consider payments made to maintain marital property from post separation income when dividing marital property. We have not, however, held that the spouse who makes such payments must necessarily be given credit for them in the final property division." *Ramsey v. Ramsey,* 834 P.2d 807, 809 (Alaska 1992) (citing *Doyle v. Doyle,* 815 P.2d 366, 369 n. 5 (Alaska 1991)); *see also Rodriguez v.*

*Rodriguez,* 908 P.2d 1007, 1013 (Alaska 1995) (holding that while payment of fair market rental value for the use of marital property may be required under some circumstances, trial courts have discretion whether to give credit for post-separation payments to maintain marital property in property divisions). The trial court explicitly addressed Larry's request for a credit for post-separation house payments.[7] Given the parties' highly disparate incomes, the trial court did not abuse its discretion in denying the credit.

### 6. *Division of the property*

Larry argues that the property division was clearly unjust because it awarded Barbara two-thirds of all of the parties' assets, including premarital assets. We have held that trial courts have broad discretion in dividing property and that such decisions will not be disturbed unless clearly unjust. *Burcell v. Burcell,* 713 P.2d 802, 804 (Alaska 1986) (citing *Hunt v. Hunt,* 698 P.2d 1168, 1171 (Alaska 1985)).

Alaska Statute 25.24.160(a)(4) mandates that, in making property divisions, courts must fairly allocate the economic effects of divorce and must consider the following factors:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

---

7. Larry's argument that the court failed to consider his request for a credit is without merit. Not only did the court explicitly consider this request in its findings of fact and conclusions of law, it also addressed the issue in its order responding to Larry's post trial motions. More-

over, the trial court granted Larry some relief from the maintenance expenses for the condominium, ordering that the parties evenly split any repair expenses incurred after April 21, 1995, the date of the final divorce decree.

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division.

As noted above, the trial court's treatment of the duration of the parties' marriage was clear error. Because this error implicates factors (A) and (H) under AS 25.24.160(a)(4) and may have influenced the court's decision, remand and reconsideration of the property division are necessary. On remand, the court must first determine what property is marital. Only the marital property is subject to division unless the court finds that invasion of separate property is required by a "balancing of the equities." AS 25.24.160(a)(4).

### C. *Award of Rehabilitative Spousal Support*

Larry argues that it was an abuse of discretion for the court to award rehabilitative spousal support given the short duration of the parties' marriage and the sufficiency of assets in the marital estate to cover Barbara's educational expenses. Larry alternatively argues that he is entitled to credit against his spousal support obligations because part of that award represented housing costs which Barbara has not actually incurred. Larry asserts that the trial court's refusal to grant such a credit was a clear abuse of discretion.

"An award of spousal support is within the trial court's discretion and will be set aside only if it is unjust or unnecessary." *Richmond v. Richmond,* 779 P.2d 1211, 1215 (Alaska 1989).

Alaska Statute 25.24.160(a)(2) provides the test for when spousal support may be granted:

(a) In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

. . . .

(2) for the recovery by one party from the other of an amount of money for maintenance, for a limited or indefinite period of time, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault; an award of maintenance must fairly allocate the economic effect of divorce by being based on a consideration of the following factors:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

■■■ (E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the division of property under (4) of this subsection; and

(G) other factors the court determines to be relevant in each individual case.

Spousal support awards must be supported by specific findings that consider the statutory and case law factors. *Gallant v. Gallant,* 882 P.2d 1252, 1255 (Alaska 1994) (citing AS 25.24.160(a)(2); *Messina v. Messina,* 583 P.2d 804, 805 (Alaska 1978); *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962)). However, "a trial court need not make findings regarding every factor." *Gallant,* 882 P.2d at 1255.

### 1. *Effect of duration of marriage on rehabilitative spousal support issue*

■■■ In its decision to award rehabilitative spousal support, the trial court explicitly relied upon the disparity between the parties' incomes and earning capacities, the age and health of the parties, the nature of the marital property, the reasonableness and necessi-

ty of the educational costs, and the duration of the relationship.[8] Because it is unclear to what extent the court's error with respect to the duration of the parties' marriage influenced its spousal support award, it is necessary to remand this issue for clarification. We note, however, that on remand the trial court has the discretion to consider "other factors the court determines to be relevant in each individual case." AS 25.24.160(a)(2)(G). Therefore, the court is free to consider the parties' entire relationship, including periods of premarital cohabitation and joint economic enterprise, in analyzing the issue of rehabilitative spousal support.[9]

2. *Denial of a credit against Larry's spousal support obligations due to Barbara's rent-free housing*

Larry asserts that he is entitled to a deduction from his spousal support obligations in the amount of $750 per month while Barbara resides rent free in the Brittany Drive residence.

■ The court justified the spousal support award, in part, by the estimated cost of Barbara's housing needs. Receipt of the full amount of this award, therefore, is neither just nor necessary when Barbara does not incur this cost. Consequently, we hold that it was an abuse of discretion to refuse to modify the judgment to provide for a reasonable deduction from Larry's spousal support obligation to reflect Barbara's rent-free use of the marital residence. Therefore, if on remand the trial court awards rehabilitative spousal support, the award must take into

consideration the periods for which Barbara has not had to incur housing costs.[10]

## IV. CONCLUSION

We AFFIRM in part and REVERSE and REMAND in part. Because we hold that the trial court erred in finding that the parties were married prior to 1992, we REMAND the property division and spousal support award for reconsideration in light of our holding. Additionally, we REVERSE the trial court's denial of a credit against Larry's spousal support obligations for Barbara's rent-free use of the Brittany Drive condominium and REMAND for determination of the proper amount of credit. We AFFIRM the trial court's decision in all other respects.

RABINOWITZ, Justice, with whom FABE, Justice, joins, dissenting in part.

Central to the court's reversal of the property division and spousal support award is its assertion that "[t]he trial court made conflicting statements in its findings of fact and conclusions of law regarding the duration of the marriage." Op. at 250. In my view, a study of the superior court's findings of fact and conclusions of law in their entirety reveals that whatever "conflict" may be found in the superior court's description of the marital status of Barbara and Larry simply reflects the ambiguity that characterized their relationship.

This ambiguity is well documented throughout the superior court's findings of

**8.** Relying on *Ulsher v. Ulsher*, 867 P.2d 819 (Alaska 1994), the court noted that in *Ulsher* the parties were married for eight years and that the Harrelsons "lived together as an economic unit for thirteen years." In an earlier comparison of *Ulsher* and the facts in this case, the court stated "[l]ike Mrs. Ulsher, Mrs. Harrelson was married for eight years."

**9.** Larry additionally argues that because the marital estate had sufficient assets to cover Barbara's educational expenses, the court abused its discretion in awarding rehabilitative alimony. This argument is without merit. Although we have expressed a preference for meeting the parties' needs through property divisions, we have held that this preference "does not apply to rehabilitative alimony or support of limited duration." *Bays v. Bays*, 807 P.2d 482, 485 (Alaska 1991)

(citing *Schanck v. Schanck*, 717 P.2d 1, 5 (Alaska 1986)).

**10.** We note that a deduction of the full $800 budgeted by Barbara for rent in her trial court exhibits may be larger than the rental expenses estimated by the trial court in calculating the alimony award. It is unclear how the trial court arrived at the alimony award of $1,200 per month. At one point, the court relied on Barbara's trial exhibit establishing her monthly expenses and earnings. This exhibit indicates a monthly deficit of $1,668 between expenses and income. The trial court, however, only awarded $1,200 per month. Therefore, a deduction of the full housing allowance proposed by Barbara may result in a deduction greater than the housing expense estimate used by the trial court in setting the alimony award.

fact and conclusions of law. Taken as a whole, these findings of fact and conclusions of law support the superior court's determination that from 1985 until 1992, Larry and Barbara held themselves out as husband and wife, sharing what they considered to be a common law marriage. In 1992 the parties were legally married in Mexico. They commingled their assets through October 1994. These findings are not clearly erroneous.

The court admits the possibility that "[i]n stating that Barbara was married for eight years, the trial court may have meant that Barbara had a marriage-like relationship with Larry for eight years.... Other language in the findings of fact and conclusions of law implies that may have been what the trial court meant." Op. at 251. Yet the court proceeds to reverse the property division and spousal support award because the superior court did not "expressly" state this or make any explicit reference to *Murray v. Murray*, 788 P.2d 41 (Alaska 1990), despite the superior court's explicit determination that by 1985 the parties "were holding themselves out as husband and wife."

We have never required that *Murray* be expressly referenced in a talismanic fashion. What is relevant is that the superior court made the distinction mandated by *Murray* between assets acquired before and during coverture—to the extent possible. *Murray* demands not a formalistic invocation of language marking the distinction between assets acquired prior to and during "coverture"—or, more appropriately, marriage[1]—but, rather, meaningful consideration of the nature of the parties' ownership of assets prior to division.

The superior court pursued precisely this inquiry, essentially determining that from at least 1985, Barbara and Larry commingled their assets. What the superior court's findings suggest is that marriage was not a meaningful marker with respect to the Harrelsons' acquisition of property. In its find-

ings of fact and conclusions of law the superior court observed the distinction between assets acquired prior to and during marriage to the extent that such a distinction existed.

The court rightly notes that a superior court is free to consider the parties' premarital relationship pursuant to *Murray* and AS 25.24.160(a)(4). The superior court did just that in dividing the Harrelsons' property and, in my view, its conclusions satisfy the requirements of *Murray*. Courts should not effectively be foreclosed from equitably distributing property that was commingled in "quasi-marital" premarital relationships. Arguably, it is in these relationships that such a distribution is most just. This result is not dictated by *Murray* and, moreover, effectively undermines its basic premise.

Because I disagree with the court's conclusion that "it is unclear to what extent the [superior] court's treatment of the duration of the marriage" influenced its judgment, I would affirm both the property division of the superior court and its spousal support award.[2]

---

1. "Coverture" is defined as

   [t]he condition or state of a married woman. Sometimes used elliptically to describe the legal disability which formerly existed at common law from a state of coverture whereby the wife could not own property free from the husband's claim or control.

   Black's Law Dictionary 366 (6th ed.1990).

2. The superior court's thorough explanation of its award is ample evidence that it properly considered the relevant factors in reaching its conclusion and that it did not abuse its discretion in doing so.