88 P.3d 104 (2004)
David D. BEAL, Appellant/Cross-Appellee,
v.
Annette J. BEAL, Appellee/Cross-Appellant.
Nos. S-10151/10191, S-10491/10511.
Supreme Court of Alaska.
February 27, 2004.
*108 Carl J.D. Bauman, Hughes Thorsness Powell Huddleston & Bauman, LLC, Anchorage, for Appellant/Cross-Appellee.
Justin Eschbacher and G.R. Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellee/Cross-Appellant.
Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

OPINION
CARPENETI, Justice.

I. INTRODUCTION
Annette and David Beal appeal in excess of twenty issues surrounding the superior court's award of interim support during the pendency of their divorce, its order dividing their marital estate, the enforcement of that order, and its refusal to grant their motions for various credits. We affirm the superior court's decisions imposing and maintaining its interim support award, ordering David to pay the property tax arrearages on the parties' home, ordering David to pay the late fees stemming from the parties' failure to pay their mortgage on time, ordering David to reimburse Annette for insurance payments, and ordering David to pay health insurance for Annette and the parties' children. We affirm the superior court's award of the selling costs of the parties' home to Annette, its valuation of a table awarded to Annette, and its denial of David's claims concerning Annette's execution upon the parties' property in order to satisfy David's unpaid interim support obligations. We also affirm the superior court's award of a painting of the parties' daughter to David, its decision that a medical malpractice reimbursement was David's separate property, its decision declining to credit Annette for the children's educational expenses during the pendency of the divorce, its conditional award of educational expenses to Annette, its decision that the family home was marital property (even though it was placed in Annette's name), and its denial of Annette's motion for attorney's fees. We remand the following issues for findings: David's claim for interim support offset credits for reduction of the principal balance on the parties' home, *109 David's motion for offset credits for gold allegedly missing from the family safe, Annette's motion for credit for her having paid some of the parties' marital debts, and David's requests for credits for claims that he allegedly became aware of after the property division. We remand the superior court's summary refusal of David's claim that the property division was not carried out in accordance with the superior court's order so that the court may issue an explanatory ruling, and we remand the question concerning the artwork in David's office so that the superior court may issue a ruling with regard to that artwork. Finally, we reverse the superior court's failure to account for the appreciation in value of David's premarital art collection in its property division and its inclusion of the separate property of the parties and their children in the portion of the marital estate awarded to Annette.

II. FACTS AND PROCEEDINGS

A. Facts
Annette J. and David D. Beal were married on June 5, 1985. They have two children, Matthew, born on September 4, 1984, and Nicole, born on March 3, 1986. The parties enjoyed a very high standard of living throughout their marriage and acquired a substantial amount of property, including a $1,100,000 family home on 11th Avenue in Anchorage. They separated on or about July 7, 1999 and Annette filed for divorce on July 9, 1999. Since the separation the parties have demonstrated a complete unwillingness to cooperate with each other and have aggressively contested every possible issue in this divorce.
David is a medical doctor specializing in otorhinolaryngology.[1] He suffers from a persistent ankle problem which required multiple surgeries between 1998 and 2000. David's medical practice, and therefore his earning capacity, is limited to some degree by his ankle problems. Despite his ankle problems, David leaves the marriage in a superior economic position due to his earning capabilities and separate estate not subject to division.
Annette earned a Bachelor's Degree in Justice from the University of Alaska. She worked in David's office during the marriage and has the ability to find meaningful employment in a similar capacity.
The parties signed a valid and enforceable prenuptial agreement before their marriage. The agreement provided that Annette would receive no alimony, but that David would provide support for Annette's education in the event that the parties divorced.

B. Procedural History
The superior court issued an interim spousal support order on October 1, 1999 providing that Annette would reside in the 11th Avenue home. It also required David to bring current the mortgage arrearages on that residence; pay the monthly mortgage, property taxes and insurance on that residence; pay Annette $5,000 per month in interim support; and pay Annette $1,312 per month in child support. David failed to meet many of these financial obligations.
On November 1, 1999 the superior court ordered the parties to identify artwork to be sold in order to pay the mortgage payments on the 11th Avenue home. On January 4, 2000 the superior court awarded Annette a judgment of $64,722.99 in unpaid spousal support. The court then approved Annette's sale of some of the parties' artwork and gold to satisfy the arrearage in interim spousal support payments needed to pay the mortgage and avoid foreclosure on the 11th Avenue home.
David moved to terminate the interim support order on May 24, 2000. The superior court did not rule on this motion before the August 2000 trial. It finally terminated the interim spousal support order when it granted the divorce on March 6, 2001. The next day the superior court announced its findings of fact and conclusions of law. It valued the parties' marital estate, comprising substantial amounts of real property, art, jewelry, and precious stones, at $2,185,361. It awarded David forty-five percent and Annette fifty-five *110 percent of the marital estate. Annette's share included the family's 11th Avenue house. The superior court also awarded Annette $131,000 in educational support, but it denied her request for attorney's fees.
On March 19, 2001 David moved for reconsideration of several issues decided by the superior court's March 7, 2001 order. On March 28, 2001 Annette moved for a judgment for unpaid interim spousal support. In his opposition to this motion, David claimed that the superior court should reduce its interim support award and credit him for a number of payments made to Annette and a number of items allegedly improperly sold by Annette to partially satisfy the judgment. On April 10, 2001 the superior court ruled on both motions. On the parties' cross motions for reconsideration of its division of the marital estate, the superior court changed its award of three pieces of artwork. It also awarded Annette $221,215.51 in unpaid interim spousal support, but did not make any findings of fact regarding David's requests for credits. Numerous questions involving the October 1, 1999 interim support award, the March 7, 2001 property division, and the credits or reimbursements requested by both parties and resolved by the April 10, 2001 order are the subject of the parties' first set of cross-appeals.
Annette then filed a motion for David to pay the parties' 1998 income tax obligation because the Internal Revenue Service had a lien for $85,013.64 on the 11th Avenue house, which was awarded to her in the superior court's March 7, 2001 order. David responded to this motion by claiming that Annette had received more than her court-ordered share of the parties' marital property. The superior court conditionally granted Annette's motion for judgment against David for the parties' 1998 tax obligation, provided that Annette could prove that the 1998 tax obligation was satisfied with assets awarded to her in the property division. The court concurrently ruled on David's multiple motions for offset credits by denying the motions without making any findings of fact.
On July 23, 2001 Annette moved to reduce support arrearages to judgment from the portion of the March 7, 2001 superior court order mandating that David pay for Annette's education expenses. David opposed this motion by arguing again that he was entitled to offset credits. On December 14, 2001 the superior court denied Annette's motion for educational support arrearages because she had not yet enrolled in school and denied Annette's motion for judgment for the unpaid taxes for lack of proof that Annette had paid them. The court also denied David's motion for offset credits. The second set of cross-appeals involves Annette's appeal of the superior court's denial of educational support arrearages and David's appeal of the superior court's denial of offset credits.

III. STANDARD OF REVIEW
"Trial courts have broad discretion in fashioning property divisions."[2] We will not set aside factual determinations made by the trial court, such as the valuation of property, unless they are clearly erroneous.[3] We review allocations of property under the abuse of discretion standard, and will reverse the trial court's allocations only if they are clearly unjust.[4] Similarly, we review a superior court's award of interim spousal support under the abuse of discretion standard.[5]
We review mixed questions of law and fact, such as the alleged inter-spousal transfer of real property in this case, under two different standards.[6] Factual determinations are reviewed under the clearly erroneous standard.[7] Legal questions are reviewed de novo, and we adopt the rule of law *111 that is most persuasive in light of precedent, reason and policy.[8]
The question of whether the superior court added terms to its property division or divorce decree is a question of law subject to de novo review.[9] We review superior court orders that merely enforce a property division or divorce decree for abuse of discretion.[10]
Finally, we "will only reverse a trial court's decision not to award attorney's fees if it was an abuse of discretion."[11]

IV. DISCUSSION
A. The Superior Court's Award of Interim Support to Annette and Maintenance of that Award Throughout the Pendency of the Divorce Did Not Constitute Error.
David argues that the superior court's decision ordering him to pay Annette roughly $15,492[12] per month in interim spousal support during the pendency of the divorce was an abuse of discretion. The superior court entered its interim award on October 1, 1999 and this award was maintained until the parties' divorce on March 7, 2001. Interim support orders during the pendency of a divorce are governed by AS 25.24.140, which allows the superior court to provide reasonable attorney's fees, spousal support, and child support.[13] David advances three arguments as to why this interim award was unreasonable, and therefore an abuse of the superior court's discretion, under AS 25.24.140(a)(2): (1) the amount of the order was too high given Annette's needs and his inability to pay, (2) the order provided maintenance for more than seventeen months, and (3) the parties' prenuptial agreement only allowed support for the purposes of Annette's education.
1. The amount of support awarded by the superior court was not unreasonable given Annette's need for such support and David's ability to pay the interim support order.
David contends that the superior court found in its Findings of Fact and Conclusions of Law dated March 7, 2001 that reasonable support for Annette was $3,638 per month (the court's award of educational support) rather than the interim payment of $15,492 per month ordered by the court in its Interim Support Order of October 1, 1999. Annette responds that the superior court did not abuse its discretion because the interim support order provided for her reasonable needs and maintained a level playing field between both parties during the pendency of the divorce.
David further contends that the interim support order was excessive because he was unable to pay the award. He bases this contention on his disability limiting his income from his medical practice, the divorce proceeding restricting the parties' assets, and his inability to obtain credit due to the *112 parties' outstanding tax obligations and the potential foreclosure on the 11th Avenue home. David also contends that he cannot pay the interim support judgment because it orders him to pay the arrearage on the mortgage and property tax payments that were outstanding prior to the court's award of monthly household payments to Annette. Annette responds that David had sufficient earning capability and actual income to pay the interim support order, and that he made a decision to allow the 11th Avenue home to go into foreclosure.
The superior court must base its interim support order on sufficient factual findings concerning the parties' needs and ability to pay.[14] In reviewing challenges to interim support orders, we have placed the burden on the supporting spouse to "demonstrate that it was impossible for him to pay the amount ordered."[15] Prior to his ankle injury, David earned a substantial six-figure income. In its interim support order, the superior court noted testimony that David had a disposable income of $251,564 for the first eight months of 1999. It found that David stated that he would voluntarily stop performing surgeries in order to allow the house to go into foreclosure and that David made significant charitable contributions during the pendency of the divorce. This finding supports the superior court's determination that David's partial disability stemming from his ankle problems did not diminish his earning capacity to the degree he claimed. Therefore, the superior court's finding that David had sufficient income to support the interim order was not clearly erroneous.
The superior court also made sufficient factual findings regarding Annette's needs. The court first found that the parties' pre-divorce lifestyle was "extravagant" and rejected Annette's request for $22,789 per month in interim support as an unnecessary attempt to maintain that lifestyle. This rejection of Annette's attempt to maintain her pre-separation lifestyle shows that the court considered Annette's actual needs. David's argument that the disparity between the superior court's award of $15,492 per month during the pendency of the divorce and its later award of $3,638 per month for tuition and living expenses for Annette's education shows an abuse of discretion is unpersuasive. Johnson v. Johnson[16] established that interim support should be enough to provide for reasonable and necessary living expenses and to ensure that neither spouse is disadvantaged during the pendency of a divorce.[17] The superior court's award met this standard. It was appropriate to order a higher level of interim support to ensure a level plane during divorce litigation, and it was appropriate to reduce this amount once the parties' property was divided and Annette was established in her living arrangements. The superior court's different awards of support for Annette were therefore well-founded and reasonable. The superior court did not abuse its discretion in awarding Annette $15,492 per month in interim support.
2. The duration of the interim support award was not unreasonable.
David argues that the superior court erred by failing to terminate the October 1, 1999 interim support order, or even rule on his May 24, 2000 motion to terminate support, until March 6, 2001, a period of more than nine additional months. Each party claims that the other sought to prolong and benefit from the delay. David argues that Annette prolonged the interim support period to receive more interim support because the prenuptial agreement precluded alimony. Annette claims that David failed to file a request for decision on his motion to terminate interim support, while refusing to pay the interim support, because he wanted to *113 buy the house after it was foreclosed upon. The superior court did not rule on David's contention that, because Annette was purposefully delaying the trial, interim support should be terminated.
The absence of a decision or explanation for the lack of a decision on David's motion is troubling, but we perceive no error. Because it was well within the superior court's power to move the trial date ahead to remedy any delay, we interpret the lack of a ruling on David's motion to terminate support as a denial of that motion.[18]
3. The prenuptial agreement precluding alimony does not preclude the award of interim spousal support.
David claims that the superior court abused its discretion by awarding Annette an excessive amount of money for re-education expenses and by providing Annette with alimony in the form of the interim spousal support. The parties' prenuptial agreement provides that Annette "shall receive no alimony upon divorce," but that David "shall pay for [Annette's] tuition, books, and all other expenses at a law school of her choice." The superior court, in its March 7, 2001 decision, found that the "parties' prenuptial agreement is ... a valid and enforceable agreement. Neither party has advanced any argument as to why the provisions agreed to should not be enforced."
David first challenges the $131,000 for Annette's education as including an unnecessary year of preparatory classes and argues that Annette should have been taking the preparatory classes during the pendency of the divorce. We hold that it was well within the superior court's discretion to determine that preparatory classes were necessary for Annette's MBA due to the amount of time that Annette had been out of school. We affirm the superior court's award of $131,000 in educational support.
David also argues that the superior court abused its discretion by refusing to apply the prenuptial agreement's alimony provision to "preclude, terminate, or reduce the Interim Support Order." Interim support is a type of alimony[19] which can be subject to a prenuptial agreement provision precluding the award of alimony. In their prenuptial agreement, the Beals agreed that Annette "shall receive no alimony upon divorce." By its definition this agreement only precludes alimony after the parties' divorce. Because the prenuptial agreement did not preclude alimony during the pendency of the divorce, the superior court did not err by awarding interim support to Annette.
B. The Superior Court's April 10, 2001 Judgment for Unpaid Interim Support
The superior court's judgment found that David owed Annette $24,822.10 in unpaid interim child and spousal support, $44,631.53 in municipal property taxes, $151,761.88 in mortgage and insurance on the family residence, and $8,818.81 in interest for a total of $230,034.32.[20] David claims that the superior court's judgment for unpaid interim support is overstated because the superior court did not credit him for a number of payments made either to or for Annette and because it ordered him to make payments that were Annette's responsibility. With one exception, we reject these claims.
1. The superior court did not err in ordering David to pay for the property tax arrearages the parties accrued prior to their separation.
David claims that Annette overstated the property tax arrearage, and that the superior court erred by including the property taxes on the 11th Avenue house between January 1, 1999 and September 30, 1999 in its judgment against him. This claim rests primarily on the fact that the interim *114 support order, which became effective on October 1, 1999 required David to "pay and bring current the arrearage on the home mortgage" and "pay the monthly mortgage, property tax and insurance on the family residence," but did not mention the arrearage in property taxes. The failure to specifically mention property tax arrearages in the interim support order does not forbid the award of such arrearages if it would further the clear purpose of the order.[21] Annette is correct that the superior court intended the order to require David to pay both the outstanding debt and the monthly mortgage payments on the 11th Avenue home because the interim support order provides that David must pay for all household expenses in addition to $5,000 in support per month. Allowing the property to be encumbered by a property tax debt which might have led to foreclosure by the municipality is inconsistent with the intent of the interim support order. That the superior court did not grant David relief on this issue provides further support for the conclusion that the omission of property tax arrearages from the original order was mere oversight. Additionally, David's claim that he is not responsible for the property tax arrearages because he provided Annette with money in early 1999 that could have been used to pay them must fail because the superior court intended that he pay the outstanding taxes. Therefore, the superior court did not err by declining to credit David for any portion of the property tax arrearages he was required to pay.
2. The superior court did not err in ordering David to pay the late charges stemming from the parties' failure to pay the 11th Avenue mortgage on time.
The superior court adopted Annette's requested judgment for unpaid interim support, which assessed to David the fees owed to Bank of America because of the parties' failure to make their mortgage payments on time. David claims that Annette should be responsible for the $413.97 per month in late charges because Annette had the funds to make these payments on time. This argument is frivolous. The superior court explicitly gave David the responsibility for making the mortgage payments, determining that he was fully capable of meeting the interim support order. Whether Annette could have made the payments is irrelevant given that the court directly ordered David to pay the household expenses. Therefore, David is responsible for all late charges resulting from his failure to meet his interim support obligations in a timely manner.
3. David failed to properly raise his contention that the superior court erred in assessing him $11,213.15 in premium payments to State Farm, the parties' original insurance carrier.
David argues that the amount of property insurance premiums claimed by Annette and awarded by the superior court was overstated. The superior court adopted Annette's requested judgment and awarded her $11,213.15 in reimbursement for insurance payments to State Farm, the insurer. David failed to raise any challenge to this reimbursement in his objections to the proposed judgment for unpaid interim support. We have previously held that "[m]atters not made issues or tried before the lower court will not be considered on appeal."[22] Because David failed to raise this issue before the superior court, we will not consider it on appeal.
4. The superior court did not err in forcing David to pay for the cost of the Bank of America insurance policy procured because he failed to make timely interim support payments.
David challenges the superior court's award to Annette of the costs of a Bank of America insurance policy on the 11th Avenue house which was obtained when Annette defaulted on the State Farm policy discussed above, arguing that Annette should *115 be held responsible for the difference in cost between the two policies because she failed to pay the State Farm policy with the money she had available. David also claims that he should not be responsible for the cost of the Bank of America policy because the policy was grossly overpriced. The above analysis concerning David's inability to claim a credit for mortgage late fees caused by his failure to make mortgage payments in accordance with the superior court order applies with equal weight to this claim. The superior court did not err by holding David responsible for any increase in insurance premiums caused by his failure to fulfill the requirements of the interim support order in a timely manner.
5. The superior court did not err in relying on a Child Support Enforcement Division statement or in failing to credit David for support payments.
David next claims that the superior court erred in relying on a Child Support Enforcement Division (CSED) arrearage statement that failed to credit him for any payments he made to Annette "prior to September 13, 2000." David claims that this statement fails to include various payments he made in April and May 2000 which should have been applied to the spousal support payments for January through May 2000 and the child support payments for March through May 2000. David is wrong: CSED did credit David for spousal and child support payments every month from October 1999 through January 2001 in the document in question, an "Adjustment Worksheet." Therefore, David has failed to demonstrate that the superior court did not credit him for the payments made in April and May 2000.
6. The superior court did not err in failing to credit David for costs of appraisals of real property.
David also claims that the judgment is overstated because he was not credited for the money he spent for appraisals of certain property under the superior court's order that the parties share the cost of appraising property, unless otherwise ordered, in the event that the value of the property was contested. Annette responds that the superior court's final judgment for unpaid interim support constituted an order that appraisal costs would not be shared. We find Annette's argument unpersuasive because the judgment for interim spousal support did not specifically mention any of David's alleged credits or the allocation of appraisal costs. Annette also argues that the parties hired appraisers as expert witnesses rather than neutral, joint appraisers, and that each party should bear the full cost for his or her independent expert witnesses. We agree with Annette on this point: One party should not be forced to pay for one who is essentially the other party's expert witness. Therefore, the superior court did not err by declining to credit David for the majority of his appraisal costs.
7. The superior court erred in failing to credit David for one-half of the appraisal cost of his medical practice.
We note an exception to the rule stated in the previous section for the appraisal costs regarding David's medical practice. The prenuptial agreement provided that David's practice could only be valued "by the accounting firm that prepared the business' most recent federal income tax return." This provision, which explicitly provides for a particular appraiser, was agreed to by both parties. Therefore, David should be credited with half of the cost of this appraisal. David's brief does not clearly state the costs of this appraisal, as it lists three different parties that appraised David's medical practice and holdings. Because the record is unclear on this point we remand this issue to the superior court to make factual findings regarding the cost of valuing David's medical practice by the appraiser specified in the prenuptial agreement, and to credit David for one-half of that amount.
C. The Superior Court's Resolution of Credits David Sought To Offset the Amount of Money He Owed Annette for Interim Support Arrearages
1. The superior court should determine whether to credit David for reducing the principal balance on the 11th Avenue home.
The superior court valued the Beals' 11th Avenue home at $1,100,000 and subtracted *116 the principal balance of $765,219 and selling costs of $66,000 to arrive at an award to Annette of an equity value of $268,781 in its March 7, 2001 property division. David claims that the superior court undervalued the home because the equity value had been substantially increased by his mortgage payments during the pendency of the divorce. He also argues that the superior court erred by denying his request, made in response to Annette's March 28, 2001 filing of a Judgment for Unpaid Interim Support, for a credit to offset the alleged undervaluation of the home in the property division. Annette responds that David is precluded from challenging this issue on appeal because he failed to present evidence supporting his current valuation of the property at trial.
We have previously held that the date of valuation should ordinarily "be as close as practicable to the date of trial."[23] But while the property should be valued as of the date of trial, and while David did not present evidence supporting his current valuation at the trial, David argues that another avenue to relief is available to him in this case. In opposing Annette's post-trial motion for Judgment for Unpaid Interim Spousal Support, David demonstrated that "[t]he huge mortgage payments on the property on 11th do reduce the principal," pointing to the bank's records, submitted by Annette, showing that the mortgage was about $709,000 whereas the court found that the principal was about $765,000. Thus, evidence was before the trial court, shortly after the court issued its valuation, that suggested that the court's findings were incorrect. Because the trial court must consider payments to maintain marital property from post-separation income when dividing marital property,[24] and because David presented his argument and pointed to the evidence supporting it shortly after the court issued its findings, we remand for the superior court to consider whether David should receive credit for post-separation mortgage payments that were part of his interim support payments.
David also claims that he should be entitled to additional credit because Annette sold the home for $1,330,000 rather than the $1,100,000 that the court applied to her share of the marital assets in its valuation. This claim is without merit because property is valued for the purposes of division at the time of trial, rather than at the time it is sold.[25] Neither party challenged the $1,100,000 appraisal of the home at trial.
2. The superior court did not err in declining to credit David for his payment of health insurance for Annette and the children.
David claims that he should be credited with an offset for half of the health insurance premiums he paid for the children's insurance. David also claims that he should be reimbursed for the health insurance he provided Annette during the pendency of their divorce. In response to a question from Annette's attorney at the superior court hearing on interim support, David affirmed that he would continue paying for the family health insurance. He paid for this health coverage throughout that time period while under court order to make the interim support payments. Given David's offer to pay health insurance before the interim support order was entered, it appears that the superior court intended the interim support payments to be made in addition to the health insurance payments. Therefore, the superior court did not abuse its discretion in declining to credit David for these payments.
3. The superior court did not err in awarding Annette selling costs for the 11th Avenue home.
David claims that the superior court abused its discretion by awarding Annette $66,000 in selling costs for the 11th *117 Avenue home. David claims that the superior court's award of selling costs to Annette and concurrent refusal to award selling costs on the property awarded to him was error because the superior court did not force Annette to sell the 11th Avenue house, while the large judgments against him effectively will force him to sell his properties. We have held that the superior court must consider sales costs when its property division is premised on an economically disadvantaged party being forced to sell a house.[26] The superior court expressly premised its property division on Annette being the economically disadvantaged party, and it is obvious from the findings that her earning capacity was clearly not enough to cover the household payments. David's argument is without merit, as the superior court's findings regarding the parties' relative earning capacities which is unassailableamount to a finding that Annette would have to sell the house while David could earn enough to maintain his properties. Because the disparate treatment of the parties with regard to selling costs was justified by the superior court's findings, the award of selling costs to Annette did not constitute error.
4. The superior court did not err in adopting an appraiser's valuation of a table.
David claims that Annette's appraiser undervalued a rosewood table awarded to Annette under the assumption that the table was made of mahogany, and that the superior court erred by adopting the appraiser's valuation of the table. He seeks a credit for the alleged difference in value. Annette admits that the appraiser erred in thinking that the table was mahogany but argues that this did not lead to an error in valuation. David is correct that his lay testimony that the table was worth $30,000, as opposed to the $6,640 appraised value, is admissible to prove the table's value.[27] Nonetheless, we cannot say that it was clear error for the trial court to adopt a trained appraiser's valuation of a table over the evaluation of an owner of the table. We hold that the superior court did not err by declining to allow David any additional credit for the table.
5. David did not properly raise his contention that the superior court erred by allowing Annette to execute on David's artwork.
David claims that Annette sold some of David's separate, pre-marital art to her friends at a discount in violation of AS 09.35.140.[28] The superior court approved Annette's sale of the selected art on February 4, 2000 in order to satisfy the January 4, 2000 judgment against David for unpaid interim support and to save the family home from foreclosure. Even though the details of the sale were clear at the time, David did not raise any objection to the sale based on the notice requirement of AS 09.35.140. Because this issue was not presented to the superior court, David cannot raise it on appeal.[29]
6. The superior court erred in failing to make any factual findings in conjunction with David's request for credit for gold allegedly missing from the family safe while it was under Annette's sole control.
David claims that he should be credited for gold that was his separate property and that was allegedly removed from the safe in the 11th Avenue house while Annette was in sole control of the safe. David contends *118 that there were forty-nine ounces of raw gold, gold bullion, and gold coins in the safe as of July 7, 1999, the last time he was allowed in the house. Annette's attorney acknowledged that David's gold at the 11th Avenue house was worth between $15,000 and $18,000. Almost all of David's gold in the safe[30] was sold to satisfy a judgment for unpaid interim support against him and to avoid the foreclosure of the 11th Avenue home, and David was credited for the sale of $9,685.13 in gold. Annette apparently admitted receiving a payment of $6,354 for more gold, but this payment was not accounted for in the property division or the April 10, 2001 judgment for unpaid interim support. Annette's only response to this claim is her assertion that she "knows of no gold missing. If there had been any additional gold, [she] would have sold it too." That appears to be David's point: that Annette probably used the gold to support herself. Because it was reasonable for David to assume that the $6,354 of gold remaining after the judgment for unpaid interim support had been satisfied would be credited towards other unpaid interim support obligations, it was proper for him to seek compensation for the allegedly missing gold as a credit for unpaid interim support in April 2001. But the superior court failed to make any findings in this regard. We remand this issue for findings in regard to David's motion for credits for the alleged missing gold.
D. Annette's Motions for Credits for Claims Involving the Parties' Property and Marital Debts
1. The superior court erred in dividing the artwork in David's office.
Annette claims that the superior court erred in finding that David had pieces of art by Miro and Zirul in his office that were part of the marital estate while failing to value or award the artwork. Annette should have been credited for fifty-five percent of the value of any marital art in accordance with the overall property division. David does not object to giving Annette her requested $1,925 credit for the Zirul, but contends that he does not possess the Miro. The superior court erred in failing to value or award the Miro after finding that it was marital property. On remand the superior court must credit Annette for the Zirul. It also must determine the value of the Miro and award it to one of the parties, though it is free to reexamine whether there was a sufficient factual basis for finding that the Miro was still part of the marital estate at the time of divorce.
2. The superior court did not err in awarding a painting of Nicole to David.
Annette claims that the superior court erred in awarding David a painting of their daughter Nicole commissioned by the parties at a cost of roughly $20,000. The superior court awarded the painting to David for sentimental reasons because his relationship with Nicole was strained. Annette first argues that the painting was a gift to Nicole and is therefore Nicole's separate property. She argues in the alternative that the painting is marital property and that she should therefore be credited with her share of its value. There is no indication in the record that the painting is Nicole's separate property. Nor is there any record evidence of the painting's fair market value. It was well within the superior court's discretion to award a painting of almost entirely sentimental value to the spouse who does not receive primary physical custody of the child.
3. The superior court erred in finding that David's pre-marital artwork appreciated $63,788 while failing to account for this appreciation in the property division.
Annette contends that she should be credited for any appreciation in value of David's pre-marital artwork. The parties' prenuptial agreement provided that the appreciation of separate property would be considered a marital asset. The superior court found that David's pre-marital artwork appreciated *119 $63,788 over the course of their marriage but did not account for this appreciation in its property division. David suggests the superior court failed to include the appreciation in its division of the marital estate because it implicitly agreed with his earlier claim that the appraisal was incorrect, and the true amount of appreciation was "de minimis." This assertion is unsupported in the record. Because the prenuptial agreement specifically mandates that appreciation of separate property be treated as a marital asset, the superior court erred in failing to account for significant appreciation of pre-marital artwork in the property division. We remand this issue to the superior court so that it may credit Annette for the appreciation of David's separate artwork.
4. The superior court erred in including the separate property of the parties and their children in the marital estate.
Annette claims that the superior court incorrectly included the separate property of the parties and their children in the marital estate. The superior court found that such separate property existed and that it was identified by the initials of the property owners in the exhibits presented at trial. All of this separate property was awarded to Annette and credited against her in the property division, mistakenly raising the value of the property awarded to her in that division.
David concedes that the superior court included the separate property in the marital estate, but argues that the children's property should be characterized as Annette's because she has custody of the children. This argument is without merit because David has not alleged that Annette violated her duties as trustee of the children's separate property by misusing or misappropriating the property.[31] The custodial parent should not have the children's separate property credited against his or her share of the marital estate because that parent is under a duty to use that property for the children's benefit or allow the children to use it for their own benefit. Therefore, we remand this issue to the superior court to reduce its valuation of the portion of the marital estate awarded to Annette by the value of the parties' and their children's separate property.
David also claims that the superior court did not err in failing to credit Annette for the value of his separate property because she has not returned many of the items from the 11th Avenue house and that the few items returned were damaged. The superior court did not make any findings on whether Annette had returned David's separate property. We remand the question of whether Annette complied with the property division by returning David's separate property.
5. The superior court did not err in determining that the $46,701 medical malpractice reimbursement was David's separate property.
Annette claims that the superior court erred in characterizing as David's separate property a reimbursement from a payment made during the marriage to settle a medical malpractice claim against David. She argues that the payment was made from joint household funds and should therefore be characterized as marital property. David responds that the money for the settlement came from his medical practice and was therefore his separate property under the prenuptial agreement. Property is considered part of the marital estate if it is treated as a "joint holding" by the parties.[32] But the parties here did not treat the reimbursement as a joint holding. The money for the settlement apparently came from David's Pacific Northern Academy bonds, which were purchased with David's separate funds, although the proceeds from the bonds were channeled through the parties' joint account. Other than movement of the funds through a joint account, the settlement money clearly appears *120 to have been David's separate property. The superior court did not abuse its discretion by classifying the malpractice reimbursement as David's separate property.
6. The superior court failed to make findings on whether Annette paid some of the parties' marital debt.
Annette claims that the superior court erred by failing to assign the debts accumulated by the parties during their marriage. Annette claims that she paid $11,087.62 in marital debt and that three bills remain outstanding. David asserts that the debts in question should be considered Annette's personal debts, and could have been covered by the interim support payments she received from David. The facts are unclear. We have previously held that the superior court must consider whether one spouse is entitled to credits for his or her payment of marital debt with post-separation income in order to preserve the marital estate.[33] We now hold that the superior court must consider any payment of debts accrued during marriage out of post-separation income, regardless of whether the payments preserve the marital estate, because such liabilities are as much a part of the marital estate as marital assets. Therefore, we remand this issue to the superior court to determine whether the debts alleged by Annette existed and whether any such debts are separate or marital property. The superior court should apportion any such debts between the parties in accordance with their status as separate or marital property.
7. The superior court did not err by declining to provide Annette with credit for the children's educational expenses.
Annette claims that she should be reimbursed for the children's educational expenses during the pendency of the divorce because they are marital debts. In the August 2000 trial the superior court determined that any future educational expenses would be taken from the children's substantial funds. The superior court did not err by declining to award Annette credit for similar post-separation educational expenses because the expenses could have been paid with the children's funds.
E. The Superior Court Did Not Err in Awarding Annette $131,000 To Pursue Her Education and Refusing To Force David To Pay the Support Without Proof that Annette Was Enrolled Full-time.
Annette claims that the award of $131,000 for her education did not include $50,000 for tuition costs. Under the parties' prenuptial agreement David is responsible for Annette's tuition, books, other educational expenses, and reasonable support at a law school[34] of her choice. The superior court found that this provision entitled Annette to the above support for one year of preparatory classes at UAA and the two-year Master's of Business Administration program at the University of Washington. Annette argues that the award of "the total sum of $131,000" does not include her tuition costs. But the superior court clearly considered both tuition and living expenses in finding that tuition, books, and fees for the three years of schooling would cost roughly $50,000 and that reasonable support for the rehabilitative period was somewhere between the $15,168 per month requested by Annette and the $1,500 per month offered by David. It concluded by finding that "a reasonable amount of support for David to pay Annette to complete her MBA degree is the total sum of $131,000." This award clearly included Annette's tuition costs and cannot reasonably be interpreted to provide Annette with an additional $50,000 of tuition. We reject Annette's argument that tuition was not included in the superior court's award.
*121 Annette also claims that the trial court erred in estimating her reasonable living expenses in arriving at its $131,000 award. She argues that the court both underestimated the cost of her education and awarded her far less than the amount necessary for her reasonable support. The superior court thoroughly analyzed the cost of Annette's education, and did not abuse its discretion in awarding $50,000 for educational expenses. As for living expenses, we find no abuse of discretion in the award of $81,000 for three years, post-divorce. Therefore, we hold that the superior court did not abuse its discretion by awarding Annette the total of $131,000 in rehabilitative support.
Annette further claims that the superior court erred in denying her motion for educational support for her year of preparatory classes on the grounds that she was not enrolled at UAA. Annette apparently took two summer classes but did not register for fall classes, allegedly because David had not made the educational alimony payments from March through July 2001. The superior court refused to compel David to pay the ordered educational support because Annette did not "provide any proof that she has been or is enrolled as a full-time student in a university pursuing her educational goals." Annette argues that the superior court's order that she be enrolled full-time adds a new term to the March 7, 2001 award and removes a needed degree of flexibility in determining her course load. Though we are sympathetic to providing custodial parents with flexibility in pursuing rehabilitative education, there was no error here: Annette requested and received support for one year of preparatory classes at UAA. The superior court did not abuse its discretion by forcing her to abide by the award.
F. The Superior Court Did Not Err in Finding that the Real Property Placed in Annette's Name Was Marital Property.
Annette claims that the superior court erred in classifying property given to her by David as marital property. David transferred a number of pieces of real property to Annette over the course of their marriage. One of these properties was sold in order to acquire the 11th Avenue home, which was held in Annette's name. The parties' prenuptial agreement provided that gifts become the separate property of the recipient. Annette argues that the property transfers were gifts from David to her and are therefore her separate property. David responds that the properties were only placed in Annette's name to ensure that they would not be lost in possible medical malpractice judgments against David. We have held that the relevant factors in "determining whether property should be characterized as marital are ... `(1) the use of property as the parties' personal residence ..., (2) the ongoing maintenance and managing of the property by both parties,'"[35] "(3) placing the title of the property in joint ownership and (4) using the credit of the non-titled owner to improve the property."[36] The superior court specifically found that the first, second, and third factors were present in this case. Additionally, the superior court based its finding that the properties were marital property on the testimony of a number of the parties' friends, who supported David's claim that the properties were placed in Annette's name to guard against medical malpractice claims rather than as gifts. The superior court's extensive factual findings on the parties' intent in transferring the property to Annette are sufficient to support its finding that the property placed in Annette's name was marital property. The superior court did not abuse its discretion in finding that the property was marital property.
G. The Superior Court Did Not Err in Denying Annette's Motion for Attorney's Fees.
Annette argues that the superior court abused its discretion by declining to award her attorney's fees. She claims that *122 her litigation costs were driven up by David's noncompliance with court orders and refusal to produce discovery materials in a timely fashion. David responds that Annette has failed to demonstrate that the superior court abused its discretion in denying fees for Annette's aggressive litigation of this case. We have mandated a two-step process for determining whether attorney's fees should be awarded under AS 25.24.140(a)[37] for vexatious conduct by a party in a divorce proceeding.[38] The superior court must first determine whether fees are appropriate under the general rule looking to the parties' economic situations; it may then increase any award based on misconduct by one of the parties.[39] The superior court denied Annette's request for attorney's fees based on our decision in Beard v. Beard,[40] which recognized that awards of attorney's fees under AS 25.24.140(a) are based on the "relative economic situations and earning powers of the parties"[41] and should ensure that "both spouses have the proper means to litigate the divorce action on a fairly equal plane."[42] The superior court found that the property division compensated for the disparity in the parties' earning capacity and left them with comparable ability to litigate the action. It further found that both parties had needlessly increased litigation costs and been completely uncooperative throughout the divorce, and held that neither party had clean hands to request fees for vexatious conduct. Because these factual findings are sufficient to support a denial of attorney's fees under AS 25.24.140(a), we uphold the superior court's denial of Annette's motion for attorney's fees.
H. The Superior Court Erred in Summarily Refusing David's Claims for Credits Arising After the March 7, 2001 Order.
1. The superior court erred in failing to make factual findings on whether the parties' property was divided in accordance with its order.
David claims that Annette controlled the court-ordered division of the parties' art, jewelry, and precious stones in a manner that left him with $175,000 less than the $430,453.50 of such property he was awarded. Annette argues that David personally and willingly divided the property. Her only support for this contention is the affidavit of a paralegal at her attorney's firm who was present at the time. The superior court denied David's motions for credit for Annette's alleged violation of the property division without a hearing and did not otherwise address the claim. We have previously held that a superior court's denial of a credit should be reversed and remanded if the record shows a genuine dispute regarding the requested credit and the superior court failed to make factual findings on the issue.[43] In this case the record provides some support for David's claim of an unequal property division, presenting a genuine issue of material fact. Therefore, we remand for factual findings the issue whether David should be credited for Annette's alleged violation of the court-ordered property division.
*123 2. The superior court erred in failing to make any findings on David's request for credits that he allegedly became aware of after the court divided the marital estate.
David claims that he should receive credits for (1) property tax payments that were allegedly misappropriated by Annette, (2) a $12,413 account awarded to him but allegedly emptied by Annette, and (3) a gun that the court found was David's separate property but that Annette did not return to him. He contends that he only became aware of his right to these alleged credits after the divorce trial.
David claims that he gave Annette money to pay property taxes and seeks credit for this money. Annette responds that the appeal should be denied because the issue was not raised at the trial and the appeal was not filed in a timely manner. David responds that Annette's alleged misuse of this payment was not raised at the trial because he did not discover it until after the conclusion of the trial. Alaska Civil Rule 60(b)(2) allows a court to relieve a party from a final judgment if he or she presents "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[44] Because the timing of David's discovery of the alleged conversion is a factual issue, we remand the question whether David exercised due diligence in presenting his request for a credit. If David brought this claim in a timely manner, the superior court should determine whether he is entitled to credit for the allegedly misused property tax payments.
David argues that he should receive credit for a $12,413 account awarded to him in the superior court's property division, because it was emptied by Annette, and for his gun, which was retained by Annette. Annette responds that David's appeal must be rejected because he failed to raise the issue at the trial level. She also argues that this court does not have jurisdiction under AS 22.05.010(a)[45] because the superior court has not ruled on the issues. That statute is inapplicable to this appeal because the superior court's general denial of an offset credit in this case appears to apply to David's request for credits for, or the return of, his alleged separate property. David claims that he only became aware of the missing money after trial and promptly presented the issue to the trial court in his November 5, 2001 motion for credits in response to Annette's motion for judgment for support arrearages. The above analysis of David's request for a property tax credit applies with equal weight to these issues. We therefore remand for a determination whether David acted with due diligence. If the superior court finds that David brought these requests for credits in a timely manner, it should make factual findings as to whether he deserves an offset credit or the return of the property.

V. CONCLUSION
We REMAND for further findings the issues of offset credits for reduction of the principal balance on the house and for the allegedly missing gold, Annette's credit for having paid marital debts, and David's requests for credit for the allegedly late-discovered issues. We REMAND for rulings the claim that the property division did not conform to the superior court's order and the issue of the office artwork. We REVERSE the inclusion of the parties' separate property and the children's property in evaluation of the estate awarded to Annette, as well as the failure to account for appreciation of David's premarital art collection. In all other respects, we AFFIRM the decisions of the superior court.
BRYNER, Justice, not participating.
NOTES
[1] The branch of medical science concerned with the study of the ear, nose, and larynx, the treatment of their diseases, etc. WEBSTER'S NEW INT'L DICTIONARY 1730 (2d ed.1960).
[2] Edelman v. Edelman, 3 P.3d 348, 351 (Alaska 2000).
[3] Bellanich v. Bellanich, 936 P.2d 141, 143 (Alaska 1997).
[4] Edelman, 3 P.3d at 351.
[5] Johnson v. Johnson, 836 P.2d 930, 933 (Alaska 1992) (examining award of interim spousal maintenance under AS 25.24.140(a)(2) for abuse of discretion).
[6] Brooks v. Brooks, 733 P.2d 1044, 1055-56 (Alaska 1987).
[7] Id.
[8] Bellanich, 936 P.2d at 143 (quoting Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).
[9] Horchover v. Field, 964 P.2d 1278, 1282 (Alaska 1998).
[10] Id.
[11] Edelman v. Edelman, 61 P.3d 1, 4 (Alaska 2002).
[12] The superior court ordered David to pay Annette $5,000 per month in spousal support and to pay roughly $10,492 in mortgage, property tax, and insurance payments related to the family house occupied by Annette.
[13] AS 25.24.140 provides in pertinent part:

(a) During the pendency of the action, a spouse may, upon application and in appropriate circumstances, be awarded expenses, including
(1) attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action; in applying this paragraph, the court shall take appropriate steps to ensure that the award of attorney fees does not contribute to an unnecessary escalation in the litigation;
(2) reasonable spousal maintenance, including medical expenses; and
(3) reasonable support for minor children in the care of the spouse and reasonable support for unmarried 18-year-old children of the marriage who are actively pursuing a high school diploma or an equivalent level of technical or vocational training and living as dependents with the spouse or designee of the spouse, if there is a legal obligation of the other spouse to provide support.
[14] Johnson v. Johnson, 836 P.2d 930, 934 (Alaska 1992) (remanding for factual findings on parties' "relative economic circumstances and needs ... and the ability to pay the maintenance").
[15] Virgin v. Virgin, 990 P.2d 1040, 1043 (Alaska 1999).
[16] 836 P.2d 930 (Alaska 1992).
[17] Id. at 934 (stating that "an award of interim maintenance provides for reasonable and necessary living expenses while divorce litigation is pending and insures that neither spouse is disadvantaged in presenting their claims").
[18] While it would have been preferable for the superior court to rule explicitly on the motion, Annette cannot be blamed for the superior court's failure to rule. And the plethora of motions and counter-motions by both parties suggests that the superior court determined that it would be best to resolve all pending disputes after hearing the evidence at trial.
[19] Edelman v. Edelman 3 P.3d 348, 357 (Alaska 2000); Lewis v. Lewis, 785 P.2d 550, 553 n. 4 (Alaska 1990); BLACK'S LAW DICTIONARY 73-74 (7th ed.1999).
[20] To this amount, payable as of the date of the judgment, the superior court added 8.5% interest until paid in full.
[21] Cf. Ellingstad v. State, Dep't of Natural Res., 979 P.2d 1000, 1006 (Alaska 1999) (holding that maxim of statutory interpretation "expressio unius est exclusio alterius," meaning "the expression of one thing implies the exclusion of others... will not apply if contrary to the purpose of the statute").
[22] B.B. v. D.D., 18 P.3d 1210, 1214 (Alaska 2001).
[23] Ogard v. Ogard, 808 P.2d 815, 819 (Alaska 1991).
[24] Ramsey v. Ramsey, 834 P.2d 807, 809 (Alaska 1992). See also Harrelson v. Harrelson, 932 P.2d 247, 253 (Alaska 1997).
[25] Ogard, 808 P.2d at 819.
[26] Tollefsen v. Tollefsen, 981 P.2d 568, 571-72 (Alaska 1999) (property division premised on economically disadvantaged wife selling real property awarded to her but failing to provide for cost of repairs and sale for property constituted error).
[27] See Osborne v. Hurst, 947 P.2d 1356, 1361 (Alaska 1997) (quoting Schymanski v. Conventz, 674 P.2d 281, 286 (Alaska 1983)).
[28] AS 09.35.140 states:

Before the sale of property on execution, notice of the sale shall be given as follows:
(1) notice of the sale of personal property is given by posting a written or printed notice of the time and place of sale in three public places within five miles of the place where the sale is to be held, not less than 10 days before the day of sale; one of the notices shall be posted at the post office nearest to the place where the sale is to take place[.]
[29] B.B. v. D.D., 18 P.3d 1210, 1214 (Alaska 2001).
[30] The appraisal of the parties' property listed only seventy dollars worth of David's gold coins in the safe.
[31] See, e.g., In re Hambright, 762 N.E.2d 98, 101-03 (Ind.2002) (recognizing and applying traditional legal notion that child's custodian is also child's trustee).
[32] Wanberg v. Wanberg, 664 P.2d 568, 571 (Alaska 1983) (holding that parties may indicate by their actions intent to treat property that would otherwise be considered separate as "joint holdings").
[33] Brotherton v. Brotherton, 941 P.2d 1241, 1246 (Alaska 1997).
[34] The superior court noted that at the time the parties entered into the prenuptial agreement the parties expected Annette to attend law school, but that she subsequently changed her plans. The court found her decision to pursue an MBA program instead of law school "is reasonable and substantially meets the conditions of the parties' agreement." David does not challenge this finding.
[35] Cox v. Cox, 882 P.2d 909, 916 (Alaska 1994) (quoting McDaniel v. McDaniel, 829 P.2d 303, 306 (Alaska 1992)).
[36] Id. (citing Chotiner v. Chotiner, 829 P.2d 829, 832-33 (Alaska 1992)).
[37] AS 25.24.140 provides:

(a) During the pendency of the action, a spouse may, upon application and in appropriate circumstances, be awarded expenses, including
(1) attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action; in applying this paragraph, the court shall take appropriate steps to ensure that the award of attorney fees does not contribute to an unnecessary escalation in the litigation[.]
[38] Wright v. Wright, 904 P.2d 403, 410-11 (Alaska 1995) (awarding attorney's fees for vexatious conduct despite refusal to award fees based on parties' general economic situation).
[39] Id.
[40] 947 P.2d 831 (Alaska 1997) (holding that superior court did not abuse its discretion by awarding attorney's fees to spouse, who received $65,000 of marital assets and 60% of other spouse's pension fund, because of her drastically inferior earning capacity).
[41] Id. at 833 (quoting Kowalski v. Kowalski, 806 P.2d 1368, 1372 (Alaska 1991)).
[42] Id. (quoting Lone Wolf v. Lone Wolf, 741 P.2d 1187, 1192 (Alaska 1987)).
[43] Berry v. Berry, 978 P.2d 93, 96-97 (Alaska 1999).
[44] Alaska R. Civ. P. 60(b)(2).
[45] AS 22.05.010(a) states: "[t]he supreme court has final appellate jurisdiction in all actions and proceedings. However, a party has only one appeal as a matter of right from an action or proceeding commenced in either the district court or the superior court."